MICHAEL KANTER, BENJAMIN KANTER, JANE KANTER AND MARIANNE KANTER, PARTNERS TRADING AS KANTER ASSOCIATES, PLAINTIFFS, v. CITY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; BOARD OF ADJUSTMENT OF THE CITY OF PASSAIC; CITY OF PASSAIC REDEVELOPMENT AGENCY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; ELIAS DRAZIN; AND TABERON CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Argued October 31, 1969—Decided November 17, 1969.

*Mr. Frank A. Carlet* argued the cause for plaintiffs (*Messrs. Goldman, Carlet & Garrison,* attorneys).

*Mr. Martin Klughaupt* argued the cause for defendant Board of Adjustment of Passaic and all other defendants.

*Mr. Otto F. Blazsek* appeared for defendant City of Passaic and Elias Drazin.

*Mr. Meyer Sugarman* appeared for defendant City of Passaic Redevelopment Agency (*Messrs. Friedbauer & Friedbauer,* attorneys).

*Mrs. Leslie W. Finch* appeared for defendant Taberon Corporation (*Messrs. Keenan and Finch,* attorneys).

JOELSON, J. S. C. Plaintiffs filed a complaint on April 16, 1969 seeking to set aside a variance granted by the Passaic Board of Adjustment to Taberon Corporation. Thereafter, on May 18, 1969 it filed a second complaint seeking to set aside certain other acts of the defendants which will be hereinafter described. Both actions are complaints in lieu of prerogative writs and have been consolidated. This matter now comes before the court on cross-motions for

summary judgment made by identical plaintiffs and defendants in both actions.

The controversy centers around the authorization for defendant Taberon Corporation to construct an office building of no more than 18,000 square feet on the northwest corner of Prospect Street and Howe Avenue in the City of Passaic without any on-site parking facilities being provided. It is undisputed that under the Passaic zoning ordinance there is a requirement that one on-site parking space be provided for every 400 square feet of gross floor area for an office use in excess of 10,000 square feet.

It is also undisputed that the premises in question are included within the area of the redevelopment plan of the City of Passaic known as "Urban Renewal Plan for the Downtown Passaic Project, No. N. J. R.–71," and that the area was duly designated by ordinance of the Passaic Board of Commissioners on May 24, 1966. It further appears that the ordinance specifically approved said urban renewal plan, which plan had been prepared pursuant to the Redevelopment Agencies Law, *N. J. S. A.* 40:55C–1 *et seq.*, by the Passaic Redevelopment Agency for the area which had been determined to be a "blighted area."

It is likewise uncontested that the Redevelopment Agency contracted to sell the premises to Taberon Corporation subject to that corporation being granted a variance from the zoning regulations so as to be able to construct a four-story office building without any on-site parking facilities. The parties also agree that such a variance was granted Taberon Corporation by the Passaic Board of Adjustment, but plaintiffs contest the validity of such a variance.

While contending that the variance was properly granted, the defendants also argue that it was not necessary to apply for the variance because of the ordinance of May 24, 1966 and subsequent amendments thereto. They point out that the ordinance specifically approved the urban renewal plan, and that section F of the plan provides that "The Urban Renewal Plan may be amended from time to time by Resolution of the

Board of Commissioners of the City of Passaic and of the City of Passaic Redevelopment Agency."

It is established that the plan was amended by resolution of both the Redevelopment Agency and the board of commissioners. On October 17, 1969 the board of commissioners by resolution provided that an office building not in excess of 18,000 square feet may be erected on the site in question, and that "no on-site parking shall be required."

Finally, on May 1, 1969 the board of commissioners passed an ordinance which provided:

In all areas officially declared and delineated as urban renewal projects areas or neighborhood development program areas by duly adopted ordinances of the governing body of the City of Passaic, the standards and controls and designations contained in such legally adopted urban renewal or neighborhood development plans shall apply and shall take precedence over any standards and controls contained in this zoning ordinance.

Defendants contend that it was not necessary to apply for a zoning variance because of the ordinance of May 24, 1966, the resolution of October 17, 1968 and the ordinance of May 1, 1969. Against this contention plaintiffs argue that the resolution of October 17, 1968 was null and void because it purported to amend an ordinance, and they urge the proposition that an ordinance can only be amended through proceedings having formality equal to that required in the original enactment of the ordinance. They further attack the validity of the ordinance of May 1, 1969 on the ground that it constitutes "spot zoning."

It is clearly and firmly established that under normal circumstances an ordinance cannot be amended by a mere resolution. In *Rhyne, Municipal Law* (1957), at 233, we find the following: "Amendments of ordinances * * * must be accomplished through proceedings having all the formality requisite for the enactment of a new ordinance." However, we are here faced with the unusual situation of an ordinance which approved a redevelopment plan which itself provided

for its future amendment by mere resolution. This raises a difficult question, upon which neither side has presented an exact precedent. However, it calls into question the validity of a part of the original ordinance of May 24, 1966, because that ordinance, in approving a redevelopment plan which provided for its own amendment by subsequent mere resolution of the Redevelopment Agency and the board of commissioners, in effect attempted to authorize its own amendment by simple resolution.

The courts have widely held that a presumption of validity applies broadly to all ordinances. 6 *Mc Quillin, Municipal Corporations,* § 20.07, p. 18 (3rd ed., 1969). In *State v. Mundet Cork Corporation,* 8 *N. J.* 359 (1952), the court stated, with regard to an attack on the validity of a municipal ordinance, that

The exercise of the legislative judgment is not subject to judicial superintendence unless it is plainly beyond the realm of the police power or palpably unreasonable * * * The burden of proof is upon those who attack the ordinance to show clearly that it is unreasonable. [at 369]

In view of the foregoing it does not appear to the court that plaintiffs have shown clearly that the ordinance of May 24, 1966 was so unreasonable in authorizing its amendment by mere resolution as to overcome the presumption of its validity. However, even if such presumption were overcome, the court is of the opinion that the matter is rendered moot by the subsequent passage of the ordinance of May 1, 1969.

The May 1, 1969 ordinance specifically provides that in urban renewal or neighborhood development areas in the City of Passaic, legally adopted urban renewal or neighborhood development plans "shall apply and shall take precedence over any standards and controls in this Zoning Ordinance." It then goes on to establish that "all ordinances or parts of ordinances inconsistent herewith are hereby repealed." It is the opinion of the court that this ordinance

effectively placed into operation with the proper formality the plan as it then existed after it had been amended by the City of Passaic Redevelopment Agency. Such apparently was the intention of the board of commissioners in passing the ordinance of May 1, 1969, since that action followed the institution of the first complaint herein, attacking the validity of the variance.

However, we must still consider plaintiff's assertion that even if the amendment to the redevelopment plan was properly adopted as regards procedure, it must still fail because it constitutes "spot zoning."

It has been said that 'spot zoning' contravenes the constitutional and statutory principle of zoning by districts in consonance with the character of the lands and structures and use suitability, and uniformity of the use within the division". 1 *Yokley, Zoning Law and Practice* § 8–2, at 361 (*3rd ed.* 1965)

Usually spot zoning cases deal with changes in use rather than relaxations of building and area requirements or on-site parking requirements. However, in cases of use changes it is well established in New Jersey that zone changes which are designed to relieve a property owner from the burden of general regulation and which do not further a comprehensive plan will be stricken as unacceptable "spot zoning." *Borough of Cresskill v. Borough of Dumont*, 15 *N. J.* 238 (1954); *Palisades Properties Inc. v. Brunetti*, 44 *N. J.* 117 (1965); *Kozesnik v. Montgomery Tp.*, 24 *N. J.* 154 (1957).

It does appear to the court that the treatment accorded the property in question would be invalid as spot zoning unless special circumstances pertain by reason of the property being a part of an area found to constitute a blighted area and designated as a redevelopment area under proceedings pursuant to *N. J. S. A.* 40:55C–1 *et seq.* In order to determine this question, a careful scrutiny of that legislation is required.

*N. J. S. A.* 40:55C–1 *et seq.* is designated as the Redevelopment Agencies Law. In its declaration of policy, *N. J. S. A.*

40:55C-2 states that blighted areas exist in many areas of the
State, and that such areas are "harmful to the physical,
social and economic well-being of the community." It then
declares it to be the policy of the State to promote public wel-
fare by creating redevelopment agencies "for the public pur-
poses of acquiring and replanning such areas and of holding,
redeveloping or disposing of them in such manner that they
shall become available for economically and socially sound
development by private or public enterprise or a combina-
tion of both."

*N. J. S. A.* 40:55C-29 provides that the powers enumerated
by the act "shall be interpreted broadly to effectuate the pur-
poses thereof," and *N. J. S. A.* 40:55C-34 vests municipali-
ties with authority *"to do any and all things necessary to aid
and co-operate in the planning and undertaking of a re-
development project"* (emphasis supplied).

The transcript of the hearing before the Passaic Board
of Adjustment on the application of Taberon Corporation
for a variance contains informative background information.
It discloses that the chairman of the Passaic Redevelopment
Agency, Joseph M. Goldstein, testified that the Redevelop-
ment Agency made a unanimous decision that the type of
office building under consideration would be "the most bene-
ficial type of building." He further testified that after public
advertising and letters to developers, only three developers
submitted bids and that only two of the three were interested
in the type of project deemed most beneficial by the Agency.

The transcript also reveals that the vice-chairman of the
Redevelopment Agency, Ronald W. Giaconia, testified as fol-
lows:

Q Well, how do you account for the fact that you recommended
this even though there was no such parking?

A Well, this particular site is within the boundaries of the design of
downtown Passaic. Within that plan the Redevelopment Agency has
provided in its urban renewal plan parking at four different parking
areas, additional parking along the mall and making parking available
to the City for the construction of parking garage.

Although the court does not hold that *N. J. S. A.* 40:55C–1 *et seq.* repeals the zoning statutes of New Jersey, it does recognize that the action of the municipal government in amending its own zoning ordinance must be read within the context of *N. J. S. A.* 40:55C–1 *et seq.* as to property within an area that has been declared as blighted and designated a redevelopment area.

In 1 *Yokley, Zoning Law and Practice, supra,* at 360, we find the following:

> There is a clear cut distinction between a validly enacted amendatory zoning ordinance and a spot zoning ordinance. Not all amendments which change or alter the character of a youth district fall within the category of spot zoning, as we generally understand the term. In many instances the establishment of a district or zone by way of amendment might appear to be out of harmony with the comprehensive community plan, but the courts will uphold the change where it does no violence to the comprehensive plan as expressed in the general zoning ordinance, but, on the contrary, harmonizes with an orderly growth of a new use for property in the respective locality.

Having carefully considered *N. J. S. A.* 40:55C–1 *et seq.* and the testimony of the chairman and vice-chairman of the Redevelopment Agency before the local board of adjustment, it appears to the court that the action of the City of Passaic is valid in light of all the circumstances. In *Wilson v. City of Long Branch,* 27 *N. J.* 360 (1958) the court stated:

> Community redevelopment is a modern facet of municipal government. Soundly planned redevelopment can make the difference between continued stagnation and decline and resurgence of healthy growth. It provides the means of removing the decadent effect of slums and blight on neighboring property values, of opening up new areas for residence and industry. In recent years, recognition has grown that governing bodies must either plan for the development or redevelopment of urban areas or permit them to become more congested, deteriorated, obsolescent, unhealthy, stagnant, inefficient and costly. As a result at least 38 states now have remedial legislation similar to that of New Jersey. [at 370]

In view of the foregoing, the motion of defendants for a summary judgment is hereby granted.